**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

UNITED STATES OF AMERICA
*ex rel* STEVEN MAY and
ANGELA RADCLIFFE,

                    Plaintiffs,

v.                                                    CIVIL ACTION NO.   5:10-cv-01423

PURDUE PHARMA L.P. and
PURDUE PHARMA, INC.,

                    Defendants.


**MEMORANDUM OPINION AND ORDER**


        The Court has reviewed *Defendants Purdue Pharma L.P. and Purdue Pharma Inc.'s*

*Motion to Dismiss Relators' Complaint With Prejudice* (Document 23).   Upon consideration of

the motion, the opposition thereto (Document 31), the reply (Document 34), other submissions

(Documents 35, 46, 47) and the entire record therein, the Court, for the reasons that follow, grants

Defendants' motion.


                                        *I.*


        Relators Steven May and Angela Radcliffe initiated this *qui tam* case pursuant to the False

Claims Act ("FCA"), 31 U.S.C. § 3729 and equivalent state statutes, against Purdue Pharma L.P.

and Purdue Pharma, Inc. (collectively referred herein as "Purdue") on behalf of the United States

and the States of California, Georgia, Illinois, New York and Tennessee.  Relators allege that

Purdue, a business engaged in the development and production of prescription drugs and products,

trained its sales force to make "false and misleading" representations to "physicians and other institutional decision makers" about the "equianalgesic cost"[1] of its "controlled-release pain relief tablet called OxyContin." (Compl. ¶¶ 4, 10-13.)   Specifically, it is alleged that in 1996 Purdue began to represent that "one milligram of OxyContin would give the same pain relief as two milligrams of the benchmark, [Purdue's drug] MS Contin[]" and that "despite OxyContin's higher per milligram cost, OxyContin was cheaper than MS Contin when they were measured based on the pain relief that they provided[.]"   (Compl. ¶ 12.)   Relators allege that Purdue knew these representations were "false and misleading" because they "knew that there was no scientific basis for making those claims and that the scientific evidence that existed indicated that the equianalgesic ratio of OxyContin and MS Contin was no greater than 1.5 to 1 – substantially and materially less than the 2 to 1 ratio." (Compl. ¶ 13.)   According to the Relators, the "false 2:1 equianalgesic ratio and cost savings assertions" were marketed to hospitals, physicians, pharmacies and hospices to "encourage[] physicians to write prescriptions" for OxyContin which resulted in "Medicaid and other government programs" paying more than necessary for a drug that was less potent. (Compl. ¶¶ 20, 28, 32.)   Relators allege that:

> Each OxyContin prescription paid for by Medicaid constituted a false or fraudulent claim to the Government when the pharmacy sought reimbursement from the Government because the Government was getting, on behalf of the Medicaid patient, materially less OxyContin, in terms of equianalgesic pain relief, than Purdue represented to the prescribing physician and others.

(Compl. ¶ 32.)   Consequently, Relators assert that "Purdue is liable, pursuant to 31 U.S.C. § 3729, for each of those false or fraudulent claims." (Compl. ¶ 33.)   Relators admit that they "are unable

---

1    Relators allege that "[t]he equianalgesic cost is the comparative cost of a pain medication when all factors are equalized to provide a typical patient with the same pain relief as competing pain medications."   (Compl. ¶ 12.)

to identify at this time all of the false or fraudulent claims which were caused by Purdue's conduct." (Compl. ¶ 34.)   However, in explanation, Relators offer that:

> Purdue's misrepresentations, systematically made nationwide over a period of several years, generated a huge number of false and fraudulent claims spanning the years 1996 to 2009.   Additionally, the false claims – primarily prescriptions that were fraudulently induced by Purdue, were usually submitted to pharmacies with whom Relators had no dealings.   Additionally, these records are usually protected by medical record confidentiality statutes and relators would generally have no access to them.   Thus, the listing of the individual false claims in this complaint is neither feasible, nor practical, and is not required.

(*Id*.)   Relators also allege that Purdue violated the False Claims Acts in the various states included in Counts Two through Five of their Complaint.[2]

This is the second such FCA suit litigated against these Defendants regarding their alleged "false 2:1 equianalgesic ratio and cost savings assertions" about the drug OxyContin. The first civil action, initiated in 2005, was asserted by Mark Radcliffe, Relator Angela Radcliffe's husband.   Mark Radcliffe was a former Purdue drug representative and district manager managing numerous sales representatives, including Relator Steven May.   Both Relator May and Mark Radcliffe allegedly marketed OxyContin and informed physicians and others of the 2:1 equianalgesic ratio and cost savings as trained by Purdue.   Mark Radcliffe's *qui tam* action (hereinafter referenced to as the "2005 Qui Tam") was ultimately dismissed by the United States District Court for the Western District of Virginia for failing to satisfy the particularity requirement for fraud pleadings set forth by Rule 9(b) of the Federal Rules of Civil Procedure. On appeal, the Fourth Circuit Court of Appeals affirmed the judgment dismissing Radcliffe's suit

---

2   Relators' Complaint has denoted two separate state law FCA claims as Count IV. (Complaint, ¶¶ 41-44) (Allegations of violations of Georgia and Illinois State False Medicaid Claims Act).

with prejudice, but disagreeing with the District Court's ruling not to enforce Mark Radcliffe's pre-filing Release Agreement with Purdue (Radcliffe executed the agreement as part of his severance from the company).   The Circuit Court determined that the Release Agreement barred Mark Radcliffe from prosecuting the qui tam matter against these Defendants.   (*See United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 582 F.Supp. 2d 766 (W.D. Va. 2008); 2009 WL 161003 (W.D. Va. Jan. 25, 2009); *aff'd* 600 F.3d 319 (4th Cir. 2010), *cert denied*, 131 S.Ct. 477 (2010).)

Defendants now move to dismiss the instant Complaint pursuant to Rules 8, 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## *II*.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).   "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)"   *Id.*   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   This pleading standard requires that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).   In matters alleging a party's fraud, Rule 9 of the Federal Rules of Civil Procedure requires a heightened pleading standard.   Rule 9 commands a party to "state with particularity the circumstances constituting fraud or mistake."   However, the party is permitted to allege generally

4

any "[m]alice, intent, knowledge, and other conditions of a person's mind."   Fed.R.Civ.P. 9(b).

In *Ashcroft v. Iqbal*, the United States Supreme Court stated that to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,   1949 (2009) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged."   *Id.*   The plausibility standard "asks for more than a sheer possibility that a [party] has acted unlawfully." *Id.*   Rather, "[i]t requires [a party] to articulate facts, when accepted as true, that 'show' that [the party] has stated a claim entitling [them] to relief[.]" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557).   Such "factual allegations must be enough to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555. "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.   However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]"– "that the pleader is entitled to relief."   *Id.* (quoting Fed.R.Civ.P. 8(a)(2)).

With respect to a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Fourth Circuit, in *Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982), described two distinct ways in which a defendant may challenge subject matter jurisdiction:

> First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true

5

> and the plaintiff, in effect, is afforded the same procedural
> protection as he would receive under a Rule 12(b)(6) consideration.
> Second, it may be contended that the jurisdictional allegations of the
> complaint were not true. A trial court may then go beyond the
> allegations of the complaint and in an evidentiary hearing determine
> if there are facts to support the jurisdictional allegations.

*Adams*, 697 F.2d at 1219 (footnote omitted); *see also Campbell v. United States*, Civil Action No.2:05-cv-956, 2009 WL 914568, *2 (S.D.W. Va. Apr. 2, 2009). "A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment." *CSX Transp. v. Gilkison*, Civil Action No. 5:05CV202, 2009 WL 426265, * 2 (N.D. W. Va. Feb. 19, 2009) (citing *Adams*, 697 F.2d at 1219; *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

### *III*.

The FCA, 31 U.S.C. §§ 3729 *et seq.*, forbids any person or entity from knowingly presenting or causing to be presented false or fraudulent claims to the federal government for payment or approval. 31 U.S.C. § 3729(a)(1)(A); *U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp.*, 681 F.3d 575, 578 (4th Cir. 2012). The FCA provides for both the Attorney General and a private person, identified as a relator, to uncover and prosecute frauds against the government. A relator's civil action is known as a *qui tam* suit on the government's behalf. "Qui tam" is an abbreviation for the Latin phrase "*[q]ui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 n.1 (2000). Once a relator files a civil action, the United States investigates the claim and chooses whether to intervene in the civil action or allow the relator to prosecute the matter on its

own. 31 U.S.C. § 3730(b)(1) and (b)(4).   "The government's decision not to intervene in an FCA action does not mean that the government believes the claims are without merit and the government's decision not to intervene therefore is not relevant in an FCA action brought by a private party." *United States ex rel. Ubi v. IIF Data Solutions*, 650 F.3d 445, 457 (4th Cir. 2011) (internal citations omitted).   A successful relator receives a percentage of the civil action's proceeds. 31 U.S.C. § 3730(d).

As it did in the first *qui tam* case, the United States has declined to intervene in this matter. (United States' Notice of Election to Decline Intervention (Document 7) ("[T]he United States notifies the Court of its decision not to intervene in this action. . . . Through the States of California and Tennessee, the United States has been advised that the States of California, Georgia, Illinois, New York and Tennessee (the "States") have also decided not to intervene in this action.") Consequently, Relators are maintaining this action in the name of the United States pursuant to 31 U.S.C. § 3730(b)(1).[3]

### *IV*.

Purdue moves to dismiss Relators' Complaint on the basis that: (1) this FCA action "is a re-litigation" of the 2005 Qui Tam civil action and the principles of res judicata "preclude re-litigation of the same claims" where the first *qui tam* resulted in a "judgment on the merits"; (2) the Public Disclosure Bar requires dismissal of this case, pursuant to 31 U.S.C. § 3730(e)(4); (3)

---

3    Section 3730(b)(1) provides that:

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.   The action shall be brought in the name of the Government.   The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

31 U.S.C. § 3730(b)(1).

the Complaint fails to satisfy the heightened pleading standard of Rule 9(b) or the basic pleading requirement of Rule 8 of the Federal Rules of Civil Procedure; (4) The FCA's six-year statute of limitations bars Relator's recovery for all claims on or before December 30, 2004, and the Relators fail to "identify any claims submitted after that day nor assert any direct knowledge of Purdue after that day[;]" and (5) the State Law claims suffer the same defects as the federal claims and this Court should either dismiss the claims or refuse to exercise supplemental jurisdiction over the claims. (Defendants Purdue Pharma L.P. and Purdue Pharma Inc.'s Motion to Dismiss Relators' Complaint with Prejudice ("Defs.' Mot.") (Document 23) at 1-2.)

Assuming, without deciding, for the purposes of the instant motion that the Relators' FCA claim is not barred by the FCA's public disclosure bar, Section 3730(e)(4), that this Court's jurisdiction is not divested, and that the Relators' have sufficiently pled an FCA claim with the appropriate level of particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, this Court finds dismissal of the instant civil action is warranted given the principles of res judicata.

## *V*.

Defendants contend that this case should be dismissed on the basis of the doctrine of *res judicata*. Under this doctrine, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Andrews v. Daw*, 201 F.3d 521, 524 -525 (4th Cir. 2000) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The "principal purpose of the general rule of *res judicata* is to protect the defendant from the burden of relitigating the same claim in different suits[.]" *Pueschel v. United States*, 369 F.3d 345, 356 (4th Cir. 2004) (citations omitted). Defendants assert, pursuant to *Pueschel v. United States*, that the doctrine of res judicata is applicable where there is: (1) a final judgment on the merits in a prior suit; (2) an

8

identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Pueschel v. United States*, 369 F.3d 345, 345-355 (4th Cir. 2004) (citing *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1991).   The Fourth Circuit has instructed that "[t]he determination of whether two suits arise out of the same cause of action . . . does not turn on whether the claims asserted are identical" but instead "on whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" (*Id.* at 355) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996).

Defendants assert that all three elements are satisfied in this case. Specifically, Defendants contend: that the dismissal of the 2005 Qui Tam was with prejudice and that a "[d]ismissal for failure to state a claim under Rule 12(b)(6) constitutes a 'judgment on the merits for res judicata purposes"; that the causes of action in both *qui tam* actions are identical; and that both the United States, as the real party in interest to the 2005 Qui Tam suit, and the relators seeking to allege identical claims are bound by the judgment. (Defendants Purdue Pharma L.P. and Purdue Pharma Inc.'s Memorandum in Support of Motion to Dismiss ("Defs.' Mem.") (Document 24) at 6.)

Relators do not challenge Defendants' latter two arguments. (*See* Relators' Opposition to Defendants' Motion to Dismiss ("Rels.' Opp'n") (Document 31) at 3-6.)   Therefore, the only issue the parties dispute in this case is the first prong of the test—whether there has been a judgment on the merits in a prior suit.   In that view, Relators assert that it is the Fourth Circuit's ruling that Mark Radcliffe's pre-filing agreement barred his *qui tam* claim, not the district court's ruling that Mark Radcliffe's pleading failed to satisfy Rule 9(b), that controls this Court's analysis. (Relators' Opposition to Defendants' Motion to Dismiss ("Rels.' Opp'n") (Document 31) at 4.)

9

Relators also assert that because the appellate ruling "was ultimately based on a lack of standing" rather than on the merits of the claim, *res judicata* does not operate to bar this suit. (*Id*.)   Relators also contend that the Fourth Circuit's affirmation of a dismissal with prejudice does not trigger the operation of res judicata.   (*Id*. at 5.)

To meet the Relators' assertion that the Fourth Circuit's ruling in the 2005 Qui Tam case was one based on standing, Defendants contend that the Circuit Court "did not make a finding about whether Mark Radcliffe had standing to file his case, but instead found against [him] on the basis of release[.]"   (Defendants Purdue Pharma L.P., and Purdue Pharma Inc.'s Reply in Support of Motion to Dismiss ("Defs.' Reply") (Document 34) at 2.)   Defendants argue that the Relators "misapprehend the Fourth Circuit's decision . . . and the role of a relator[]" because the appellate decision turned on the affirmative defense of release, not a jurisdictional bar of lack of standing. (*Id*. at 1-2.)   Defendants also argue that a release is an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure, and a dismissal on the basis of the release is a decision on the merits under the Federal Rules of Civil Procedure. (*Id*.) (citing Fed.R.Civ.P. 41(b)).   Finally, Defendants assert that a finding in its favor here would vindicate the principles of res judicata because the Relators asserting the same allegations of a previous *qui tam* action are in privity with the government, and are bound by the prior judgment, just as is the government.   (*Id*. at 3.)

This Court finds that the Relators are correct in that it is the appellate court's determination of the 2005 Qui Tam litigation that is proper for the Court to consider whether the instant claim should be barred by *res judicata*.   The Fourth Circuit Court of Appeals affirmed the dismissal of Mark Radcliffe's 2005 Qui Tam claim without consideration of the district court's ruling that his Complaint was fatally flawed pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

10

*United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 322 n.2 (4th Cir. 2010) ("Because the Release is a complete bar to Radcliffe's claims, there is no need to address Radcliffe's arguments on the Rule 9(b) dismissal nor the district Court's denial of leave to amend.")   However, this Court disagrees with the Relators' assertion that the 2005 Qui Tam case was dismissed on the grounds of Article III standing.   However, the Fourth Circuit never made any finding that the dismissal of the 2005 Qui Tam case was due to the want of Article III standing, either explicitly or implicitly.   This is likely so because it appears from both the district and appellate court opinions that neither party questioned Mark Radcliffe's Article III standing as it related to the ultimate enforcement of the Release Agreement.

However, there is some support for the Defendants' assertion that its contentions concerning the pre-filing release constituted an affirmative defense in the 2005 Qui Tam suit.   A fair reading of the district court's opinion reveals that the court considered Purdue's argument to enforce the pre-filing release as a "Release Defense" and referred to it as such on more than one occasion.   (*See United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 582 F.Supp. 2d 766, 774 (W.D Va. 2008) (District Court identifying section three by the heading of "The Release Defense" and later stating: "The facts surrounding this *defense* have been developed in the summary judgment record.") (emphasis added); *Id*. at 768 ("As to the *defense* that Radcliffe had released Purdue from the claims . . . ") (emphasis added).

Further, the Fourth Circuit had no occasion to consider whether a relator has Article III standing to pursue a qui tam action after bargaining away its right to recover under the FCA. Instead, the Circuit Court considered generally that a relator has Article III standing to bring an FCA claim "because the [FCA] effect[s] a partial assignment of the Government's damages claim

11

and that assignment of the United States' injury in fact suffices to confer standing on [the relator]." (*Id*. at 328.) (citations and internal quotations omitted.)   In making this finding, the appellate court considered Mark Radcliffe's assertion that the language of his pre-filing Release did not encompass an FCA claim because on the date the Release was executed he had not asserted the FCA claim and no assignment of the Government's damages claim had occurred.   The Fourth Circuit disagreed and concluded that Mark Radcliffe had a statutory claim and the necessary legal standing as a partial assignee, once the government suffered an injury and he became aware of the fraud causing the injury. (*Id*. at 329.)   The Circuit Court concluded that he had an interest in the lawsuit regardless of when he opted to vindicate it. (*Id*.)   The Court found that Mark Radcliffe's decision not to file his *qui tam* action until after he signed the Release "d[id] not negate the fact that he had the *right* to file suit beforehand—a right he waived under the terms of the Release."   (*Id*.). Thereafter, the Court considered whether "overriding public policy considerations" prevented enforcement of the Release and found that they did not.   Therefore, the Fourth Circuit did not find that he lacked Article III standing, as that term is used upon consideration of subject matter jurisdiction, after signing the Release.

Finally, this Court finds that the Fourth Circuit's decision in the 2005 Qui Tam case was one made pursuant to Rule 56 of the Federal Rules of Civil Procedure.   The Circuit Court stated:

> In this case the parties provided evidence and thoroughly briefed the Release issue to the district court, which clearly relied on the declarations and other exhibits presented when determining the Release did not bar Radcliffe's *qui tam* suit. The parties have also relied on evidence relevant to the Release issue in their briefs submitted to this Court. The facts in the record appear to be generally undisputed and we therefore find it proper to convert Purdue's 'Rule 12(b)(6) motion to one under Rule 56' and thus consider the district court's ruling on that basis.

12

*Radcliffe*, 600 F.3d at 326.   In light of the posture of the Circuit Court's review, it appears that its determination was a summary judgment determination on the enforcement of a pre-filing release. The Fourth Circuit has recognized that, "[f]or purposes of res judicata, a summary judgment has always been considered a final disposition on the merits."   *Dresser v. Backus*, 229 F.3d 1142, 2000 WL 1086852 (4th Cir. Aug. 4, 2000) (table decision) (quoting *Adkins v. Allstate Ins. Co*., 729 F.2d 974, 976 n. 3 (4th Cir. 1984)).   The Court observes that neither party addressed this aspect of the appellate ruling.

Upon consideration of the foregoing, this Court finds that the Fourth Circuit ruling in the 2005 Qui Tam suit is a judgment on the merits of that case.[4]   Thus, without any further challenge of the balance of the *res judicata* factors, the Court finds that the instant case is barred by the doctrine of res judicata.[5]

Given the disposition of this matter, the Court need not consider the parties' dispute as to whether the FCA's statute of limitation bars Relators' claim.

---

4    Relators also unpersuasively contend that the doctrine of res judicata should not apply in this case because both the United States and Defendants argued before the Fourth Circuit Court of Appeals that the government and other private individuals remain free to prosecute released claims. (Rels'. at 6.)   The Court finds that this argument is misplaced.   A review of the Fourth Circuit's opinion in the 2005 Qui Tam action reveals that Purdue and the Government made that assertion in support of their assertion that "prefiling releases are presumptively enforceable" and that the enforcement of such an agreement in that litigation would "uphold a number of important public policies." *Radcliffe*, 600 F.3d at 326.

5    In support of their assertion that the 2005 Qui Tam civil action was dismissed with prejudice based on the standing argument, the Relators cite *United States ex rel. Nowak v. Medtronic, Inc.*, 806 F.Supp.2d 310, 328 (D. Mass. 2001) for that proposition. However, the parties in that dispute squarely put before the court the issue of standing. Medtronic, 806 F.Supp.2d at 327 ("Finally, Medtronic argues that Dodd lacks standing to bring an FCA claim against Medtronic in this matter because he signed a termination agreement that contained an expansive release of claims.") This is a contention that was not made by the parties in the 2005 Qui Tam matter.   Additionally, the Fourth Circuit in *Radcliffe* approvingly considered the Tenth Circuit's *Ritchie* decision in its analysis of the pre-filing Release enforcement issue.   Radcliffe, 600 F.3d at 331 (citing United States ex rel. Ritchie v. Lockheed Martin Corp., 558 F.3d 1161 (10th Cir. 2009).   The Court observes that the *Ritchie* court did not make any statement that its disposition of the Release in that case was based on Article III standing.

Finally, in Counts Two through Five, Relators assert that "Purdue, through its national sales force, marketed and sold OxyContin in all fifty states with its 2:1 lies" and that those "false and/or fraudulent claims were submitted to and/or paid" by the states of California, New York, Georgia, Illinois, and Tennessee.   (*See* Compl. ¶¶ 35-46.)[6]   28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b) provide that this Court may exercise jurisdiction over the Relators' state claims. However, Section 1367(c)(3) provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."   28 U.S.C. §1367(c)(3).   Given the disposition of the Relators' FCA claim and the procedural posture of this litigation, where the parties have not engaged in any discovery and a trial date has not been established, the Court does hereby exercise its discretion to decline supplemental jurisdiction over the Relators' state claims.   The Court will, therefore, dismiss these claims without prejudice to the Relators' seeking prosecution of the claims in the respective state courts.

### CONCLUSION

Therefore, upon consideration of the foregoing, the Court does hereby **ORDER** that *Defendants Purdue Pharma L.P. and Purdue Pharma Inc.'s Motion to Dismiss Relators' Complaint With Prejudice* (Document 23) be **GRANTED.**[7]   Specifically, the Court **ORDERS**

---

6   *See supra*, n.1.

7   While the Court is aware that 31 U.S.C. § 3730(b)(1) provides that an "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting," the cause authority in this Circuit as well as others have construed this provision to mean that such "written consent" is only applicable in matters voluntarily dismissed.   *See United States ex rel. O'Malley v. Xerox Corp.*, 846 F.2d 75 (4th Cir. 1988) (Table per curiam decision) ("Section 3730(b)(1) is intended to reach voluntary dismissals and not dismissals based on substantive grounds.); *see also Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 798 n.5 (7th Cir. 2009) ("Salmeron also claims that the district court violated 31 U.S.C. 3730(b)(1) by failing to obtain the Attorney General's written consent before dismissing the action.   Such consent is not required, however, for suits like Salmeron's that are

14

that the Relators' FCA claim be **DISMISSED WITH PREJUDICE** and that the Relators' state

claims be **DISMISSED WITHOUT PREJUDICE** consistent with the ruling herein.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any

unrepresented party.

ENTER:   September 14, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

involuntarily dismissed.") *United States ex rel. Mergent Services v. Flaherty*, 540 F.3d 89, 91 (2d Cir. 2008) ("[W]e have previously construed the provision [Section 3730(b)(1) to apply 'only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the False Claims Act, and not where the court orders dismissal.'")   Given this Court's findings herein, such "written consent" is not required.