IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
|      *ex rel.* Steven May and | ) | |
|      Angela Radcliffe, *et al.*, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| v. | ) | Civil Action No. 5:10-1423 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*, | ) | |
| | ) | |
|      Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729 – 3733. Plaintiff [hereinafter "Relators"] contends that in selling and marketing their pain relief drug OxyContin, Defendants [hereinafter "Purdue"] defrauded the United States by falsely representing that OxyContin was twice as potent as, and less expensive than, MS Contin causing doctors to prescribe, and Medicaid to pay for, OxyContin rather than MS Contin. (Document No. 87 (Amended Complaint), pp. 9 - 10, ¶¶ 33 - 34.)[1]

On August 14, 2014, Purdue filed and served Notices that they were subpoenaing the depositions of Relators' attorneys Mr. Paul Roop and Mr. Mark Hurt.[2] (Document Nos. 125 and

---

[1] Relators initiated this action by filing their Complaint on December 30, 2010.

[2] Relator Angela Radcliffe is married to Mark Radcliffe who worked as a drug representative for Purdue beginning in 1996 and was promoted to district manager. Relator Steven May worked as a sales representative for Purdue beginning in 1999 and was supervised by Mark Radcliffe. (Document No. 87 (Amended Complaint), pp. 5 - 6 , ¶¶ 14, 18 and 19.) Mark Radcliffe left his employment with Purdue in 2005. He filed a *qui tam* action under the False Claims Act in the Western District of Virginia. Because he entered a general release in leaving his employment with Purdue, his action was dismissed. *United States v. Purdue Pharma L.P.*, 600 F.3d 319 (4th Cir. 2010), *cert. denied*, __ U.S. __, 131 S.Ct. 477, 178 L.Ed.2d 315 (October 12, 2010). Attorneys Hurt and Roop represented Mr. Radcliffe in that matter.

126.) The subpoenas included Requests for Documents to be Produced.[3] Relators filed a Motion to

Quash Subpoenas Seeking to Depose Their Counsel Paul Roop and Mark Hurt on September 10,

2014. (Document No. 155.) On September 17, 2014, Purdue filed an Opposition to Relators' Motion

to Quash. (Document No. 165.) On Spetember29, 2014, Relators filed their Reply to Purdue's

Response. (Document No. 179.) The parties assert that they must complete the depositions of Mr.

Roop and Mr. Hurt and have the information and documents prior to an evidentiary hearing before

the District Court respecting the application of the public disclosure bar to jurisdiction in this matter

on Thursday, October 9, 2014. (Document No. 158.)[4]

In moving to quash the subpoenas of the depositions of their attorneys (Document No. 155.),

Relators cite the Eighth Circuit's decision in <u>Shelton v. Am. Motors Corp.</u>, 805 F.2d 1323 (8th Cir.

1986), as setting the standard for determining whether or not the deposition of an opposing party's

attorneys is appropriate and a decision of the District Court for the Eastern District of Virginia

---

[3] Purdue requests, among other things, that Mr. Roop and Mr. Hurt produce drafts of the Complaint and Amended Complaints in Mark Radcliffe's action and this matter, documents upon which the allegations contained in those pleadings were derived and documents and communications concerning the preparation of those pleadings. Purdue states, "This request includes, but is not limited to, any documents supporting or undermining the statements regarding the preparation of the complaint set forth in the enclosed Declaration of Mark Hurt dated December 3, 2007, filed at Dkt. No. 58-2 in *United States, et al., ex rel. Mark Radcliffe v. Purdue Pharma L.P., et al.*, Case No. 1:05CV00089, United States District Court Western District of Virginia . . .."

[4] 31 U.S.C. § 3730(e)(4)(A) provides that "[t]he court shall dismiss an action or claim under this section, unless opposed by the government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed – (i) in a Federal criminal, civil, or administrative hearing in which the government or its agent are a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." The public disclosure bar applies in False Claims Act actions based "even in part" upon publicly disclosed information. *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013.)

indicating that the <u>Shelton</u> standard has been followed in the Fourth Circuit. (<u>Id.</u>, p. 2.) The Court in <u>Shelton</u> stated as follows:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

<u>Shelton</u>, 805 F.2d at 1327 (citation omitted.). Quoting <u>Shelton</u>, Relators contend that Courts generally view requests to depose an opposing party's attorneys as a harassing, disruptive and abusive tactic and "almost always" deny them. (<u>Id.</u>, pp. 2 - 3.) Relators then contend that Purdue cannot meet the three requirements set forth in <u>Shelton</u> for taking their attorneys' depositions respecting matters pertaining to the public disclosure jurisdictional bar. Relators assert that the work their attorneys did in preparing the Complaint is protected from disclosure under the attorney work product doctrine. (<u>Id.</u>, p. 6.) Relators then contend that the District Court determined in Mark Radcliffe's *qui tam* action that the Court had jurisdiction. Relators state that the Fourth Circuit found in ruling in this action that Mark Radcliffe's action was dismissed on non-jurisdictional grounds. Relators argue that the public disclosure bar did not apply in Mark Radcliffe's action and "principles of collateral estoppel operate to bar Purdue from relitigating this issue in this action." (<u>Id.</u>, p. 8.) Relators further contend that the Fourth Circuit's ruling in this case that Mark Radcliffe's action was dismissed on non-jurisdictional grounds is the law of the case barring Purdue from relitigating the issue in this case. (<u>Id.</u>, pp. 8 - 9.) Relators further claim that because their attorneys prepared the Complaints in Mark Radcliffe's action and this action, "it would have been impossible for either . . . to have acquired their knowledge of the allegations in those complaints from the subsequent

public disclosure of those complaints that they had drafted and filed." (Id., pp. 9 - 10.) Relators argue that for this reason, "Purdue has no legitimate need to depose [their attorneys] as to where they derived their knowledge of the allegations of the complaints in this action that overlap the allegations in the Radcliffe complaint; thus, that information is certainly not crucial to Purdue's preparation for the adjudication of that issue." (Id., p. 11.)  Finally, Relators contend that while Purdue can depose them to learn where they obtained their knowledge of the facts alleged in their pleadings, any inquiry respecting their communications with their attorneys is nevertheless attorney-client privileged. (Id.)

In their Opposition to Relators Motion to Quash (Document No. 165.), Purdue contends that the facts and circumstances in this matter meet the Shelton standard and the "more flexible balancing approach" adopted by those Courts which reject the Shelton standard. (Id., p. 7.) Purdue contends that it has no other way of learning what and how information and documents were obtained, transmitted and utilized in the preparation of the Complaint and Amended Complaint in this case than through the depositions of Relators' attorneys. (Id.) Purdue states that it has been and is unable to learn these things through the depositions of Relators themselves because Relators either do not know or assert privileges. (Id., p. 8.) Purdue then appears to contend that Relators have waived the privileges and protections which they are asserting by their conduct leaving the only avenue to obtaining the facts germane to the issue before District Court through the depositions of their attorneys. (Id., pp. 9 - 11.) Purdue asserts that the information is crucial to the preparation of its case stating, "[e]ither Relators' knowledge of the allegations underlying this case is at least partly based on public disclosures associated with the prior litigation, or it is not. But to determine whether Relators succeeded in laundering the publicly disclosed materials from the prior case through their

private discussions with Mark Radcliffe and their lawyers, Purdue (and the Court) must have evidence of how – and how perfectly or imperfectly – the information was laundered. Anything less would be unfair to Purdue, but would put the Court in the position of basing its jurisdictional fact-finding on the untested assertions of Relators and their lawyers." ((Id., p. 11.) Purdue concludes by pointing out that Relators made no mention of the documents which Purdue requested in subpoenaing their attorneys' depositions and contending that they should be deemed to have waived any objection to producing them. (Id., pp. 11 - 12.)

In their Reply to Purdue's Response (Document No. 179.), Relators basically reiterate that Purdue has not met the Shelton standard. They argue that Purdue does not dispute facts which render the taking of their attorneys' depositions unnecessary. Specifically, Relators claim that Purdue does not dispute that (1) the Complaint in Mark Radcliffe's *qui tam* suit against Purdue is the only public disclosure in issue in this case; (2) Purdue is collaterally estopped from contending that the allegations in Mark Radcliffe's suit were derived from a public disclosure; and (3) Relators' attorneys drafted and filed the Complaint in Mark Radcliffe's suit and logically therefore gained knowledge of the allegations contained in the Complaint before its public disclosure. (Id., p. 3.) Relators then assert that how their attorneys prepared the Complaint in this case "is irrelevant because Relators' counsel's source of their *knowledge* of any allegations included in the complaint that they drafted that overlapped with those in the Mark Radcliffe complaint . . . was necessarily derived from nonpublic sources – sources other than the public disclosure of the Mark Radcliffe complaint." (Id., p. 5.) Next, Relators assert that because they know how they obtained the information contained in their Complaint, Purdue has learned how they did so by taking their deposition, and they testified that they did not learn of their allegations from Mark Radcliffe's

Complaint or news reports. (Id., pp. 6 - 7.) It follows, Relators argue, that their attorneys did not show them the Complaint in the Mark Radcliffe suit before they filed their Complaint in this matter. (Id., pp. 7 - 8.) Relators then contend that their attorneys became their agents as they undertook their representation and the manner in which they learned of the information alleged in Mark Radcliffe's Complaint, i.e., from nonpublic disclosures, is imputed to Relators. Relators state that "after this knowledge was properly imputed to Relators on the formation of the attorney-client relationship, the subsequent communication of any details of those allegations to Relators is irrelevant since they would already have the knowledge of all of the allegations in the Mark Radcliffe complaint imputed to them that overlapped the allegations in their case." (Id., p. 9.) Having asserted that nothing of any relevance would be gained from their attorneys' depositions and they are unnecessary, Relators assert that even if information relevant to the public disclosure bar might be obtained, they have not waived any privileges. Relators assert that they cannot be found to have impliedly waived their right to rely upon privileges simply because their attorneys prepared Mark Radcliffe's Complaint. Relators state that "[j]ust by bringing a lawsuit, a plaintiff and his lawyer make many issues relevant. And almost all privileged information is going to be relevant to one of those issues. However, the lawyer and his client do not thereby waive their attorney-client and attorney work-product privileges so as to allow the defendant to interrogate the lawyer whether what his client told him is consistent with his client's testimony and to rummage through his confidential work papers to see his thought processes in drafting the complaint." (Id., p. 11.) Relators urge that implied waiver of privileges occurs when a party puts privileged communications and documents in issue and claim that they have not done so. (Id., p. 12.) Relators state that ordering their attorneys' deposition "is unprecedented. Granting Purdue's request would set a dangerous precedent that would encourage

6

others to threaten to seek the depositions of their opponent's lawyers as a strong-arm tactic to gain leverage in the litigation, a tactic that <u>Shelton</u> rightfully condemns as discovery abuse." (<u>Id.</u>, pp. 13 - 14.) Finally, Relators claim that they have not waived objecting to the Request for Documents to be Produced which is included with the subpoena of their attorneys because the subpoenas have not been served upon their attorneys. (<u>Id.</u>, p. 14.)

### DISCUSSION

"[A] qui tam action is based on a public disclosure when its allegations share a substantial identity with the allegations contained in prior litigation." <u>United States ex rel. King v. Hillcrest Health Ctr., Inc.</u>, 264 F.3d 1271, 1279 (10th Cir. 2001), <u>cert. denied</u>, 535 U.S. 905, 122 S.Ct. 1205, 152 L.Ed.2d 143 (2002). The undersigned has compared Mark Radcliffe's Fourth Amended Complaint in Mark Radcliffe's Western District of Virginia action with Relators' Complaint in this matter and finds that in some places Relators' Complaint contains language taken verbatim from Mark Radcliffe's Fourth Amended Complaint. Relators' Complaint is obviously an adaptation of Mark Radcliffe's Fourth Amended Complaint. In cases such as this, jurisdictional facts are often not "intertwined with the central merits" of the substantive claims. <u>See</u> <u>U.S. ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 350 (4th Cir. 2009). The undersigned finds that facts germane to the issue of the application of the public disclosure bar pertaining to when and how Relators obtained knowledge of the substantive allegations of fraud are distinct from and not intertwined with the central merits of Relators' fraud claims as set forth in their Amended Complaint. "Once a defendant files a motion to dismiss based on the public-disclosure bar, the relator bears the burden of proving by a preponderance of the evidence that the bar does not apply." <u>U.S. ex rel. Ahumada v. NISH</u>, 256 F.3d 268, 274 (4th Cir. 2014). Relators apparently claim that the bar does not apply in this case because they learned all of the facts underlying the substantive allegations of fraud in this case from Mark

7

Radcliffe privately and independently of any public source. It appears that Relators are claiming that they learned of those facts to some extent through private disclosure of publicly disclosed documents and information, i.e., the documents and information of record in Mark Radcliffe's Western District of Virginia action. It is undisputed that Relators' attorneys Mr. Roop and Mr. Hurt, who had also been Mark Radcliffe's attorneys in his Western District of Virginia action, themselves facilitated the allegedly private disclosure of documents and information to Relators which they filed in Mark Radcliffe's action in a meeting at Mr. Hurt's law office late in 2010 with Mark and Angela Radcliffe, Steven May, Mr. Roop and Mr. Hurt in attendance. Relators filed their Complaint in this action shortly thereafter. Purdue has attempted to learn when and how Relators obtained knowledge of the substantive allegations of fraud set forth in their Complaint by taking Relators' depositions. Relators and their attorneys have relied upon several privileges including the attorney-client and work product privileges to limit Purdue in its attempt though it clearly appears that they worked together to contrive a factual basis in avoidance of the public disclosure bar. Relators and their attorneys clearly have information relevant to whether Relators obtained knowledge of the substantive allegations of fraud contained in their Complaint "to any extent" from a public disclosure. Now Purdue has indicated that it is necessary to depose Relators' attorneys. The undersigned agrees.

The undersigned finds that the <u>Shelton</u> standard applies in this matter but does not apply with respect to matters pertaining to Relators' attorneys' representation in the Mark Radcliffe action. In <u>Pamida, Inc., v. E. S. Originals, Inc.</u>, 281 F.3d 726 (8th Cir. 2002), the Eighth Circuit considered application of the <u>Shelton</u> standard when a party, unsuccessful in underlying patent infringement litigation, requested the deposition of the attorney for the successful party as the successful party

8

sought indemnification of attorney's fees and costs in a subsequent case. The Eighth Circuit modified the <u>Shelton</u> standard stating as follows:

> <u>Shelton</u> was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection <u>Shelton</u> provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case. Therefore, the <u>Shelton</u> test applies only to the instant case, not to the concluded case.

<u>Pamida Inc., v. E. S. Originals, Inc.</u>, 281 F.3d at 730; <u>See also</u> <u>Asbury v. Litton Loan Servicing, LP</u>, 2009 WL 973095 at *3 (S.D.W.Va.)(District Judge Chambers) (discussing the standard for considering when the deposition of opposing counsel is and is not appropriate). Purdue may therefore take Relators' attorneys' depositions respecting their management of the documents and information which formed the factual basis for Mark Radcliffe's allegations of fraud while they maintained them privately and after they saw to their public disclosure in the Mark Radcliffe case.

Applying the <u>Shelton</u> standard in this case, the undersigned finds that the first and third factors are easily met and the second factor is met in part. Purdue has shown that Relators' attorneys managed documents and information privately and then facilitated the public disclosure of those documents and information, the very same documents and information which are the factual basis for Relators substantive allegations of fraud. Relators' attorneys are therefore uniquely positioned to provide information respecting when and how Relators obtained knowledge of the documents and information underlying their substantive allegations of fraud. The information sought is obviously relevant and crucial to the adjudication of the public disclosure bar issue. <u>In re Pioneer Hi-Bred Intern, Inc.</u>, 238 F.3d 1370, 1376 (Fed.Cir. 2001)("Counsel is often a fact witness with respect to various events, and may testify on deposition by the opposing party as to such matters without

waiver. A different result would obtain, of course, if counsel were offered to testify as to privileged or protected matters and might obtain if counsel were offered as a fact witness at trial by his client.") It remains to determine whether Relators have adequately demonstrated that the information which Purdue seeks is privileged and if so that they have not waived their privileges.  The undersigned finds that they have not.

The attorney-client privilege protects confidential communications between an attorney and client as the client seeks and obtains legal advice. The Fourth Circuit has "adopted the 'classic test' for determining the existence of attorney-client privilege[.]" Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998) The attorney client privilege only protects against disclosure of communications. It does not stand as an impediment to discovery of facts underlying those communications. Zeus Enterprises, Inc., v. Alphin Aircraft, Inc., 190 F.3d 238, 244 (4th Cir. 1999)("The privilege does not protect all aspects of the attorney-client relationship; it only protects confidential communications between lawyer and client.") The party asserting the privilege must prove that the privilege applies with respect to the specific communications at issue and was not waived. Id.; Hawkins v. Stables, 148 F.3d 379, 384 fn. 4 (4th Cir. 1998)("Proof of the attorney client privilege requires that the proponent make a showing on multiple issues.") The party asserting the privilege must demonstrate that the attorney-client communication was intended to be confidential and its primary purpose was to obtain legal advice. In re Grand Jury Proceedings (John Doe), 727 F.2d 1352, 1355 (4th Cir. 1984). "Communications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made." U.S. v. Cohn, 300 F.Supp.2d 672, 683

(D.Md. 2003).  Hawkins v. Stables, 148 F.3d at 384 fn. 4 ("As a general rule, implied waiver occurs

when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege.")

"[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." United States v. Nobles, 422 U.S. 225, 238 at n. 11, 95 S.Ct. 2160, 2170 at n. 11, 45 L.Ed.2d 141 (1975), citing Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).The work product doctrine protects against disclosure of "documents and tangible things that are prepared in anticipation of litigation or for trial . . .." Federal Rule of Civil Procedure 26 (b)(3)(A). The work product privilege may also be waived. Nobles, 422 U.S. at 239, 95 S.Ct. at 2170. Generally, work product waiver occurs through voluntary disclosure of documents or information to which the doctrine applies to third parties. But "[t]he work product privilege is not automatically waived by any disclosure to third persons. Rather, the courts generally find a waiver of work product privilege only if the disclosure "substantially increases the opportunity for potential adversaries to obtain the information." Frank Betz Assocs., Inc., v. Jim Walter Homes, Inc., 226 F.R.D. 533, 535 (D.S.C. 2005)(quoting In re Grand Jury, 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982).

"The work product immunity and attorney-client privilege are not waived by exchange of documents and information between persons with common interests in the subject matter." Chambers v. Allstate Ins. Co., 206 F.R.D. 579, 589 (S.D.W.Va. 2002). "This . . . 'common interest' doctrine is an extension of the attorney-client privilege and presupposes the existence of an otherwise valid privilege. In determining the applicability of the privilege, the focus is not on when the documents were generated but on the circumstances surrounding the disclosure of the privileged documents to a jointly interested third party." LaSalle Bank Nat. Ass'n, v. Lehman Bros. Holdings, Inc., 209 F.R.D. 112, 116 (D.Md. 2002)(Citation omitted).

11

Relators have acknowledged in responding to Interrogatory No. 2 of Purdue's First Set of Interrogatories that "later in 2010, a meeting was held among Mark Hurt, Paul Roop, Mark Radcliffe, Steven May and Angela Radcliffe at the law offices of Mark Hurt. The subject-matter of the conversation was this prospective action as well as related potential claims that Mark Radcliffe had vis-a vis Purdue. The details of the discussion are protected from disclosure by the attorney-client, attorney-work product, and common interest privileges. The parties agreed to cooperate and share information on their claims, which included Mark Radcliffe allowing relators' counsel to use all of the original source documents and nonpublic information from the action that Mark Radcliffe had brought, and to keep that information confidential from third-parties." Apparently, this meeting occurred just after the United States Supreme Court denied Mark Radcliffe's Petition for Certiorari (October 10, 2010). It is not evident that Relators' attorneys' representation of Mark Radcliffe continued after the Supreme Court's denial. It clearly appears that a primary purpose of the meeting was the conveyance or transfer of documents and information *from Mark Radcliffe to Relators* so that Relators could file their Complaint in this matter. Because, as is evident, Mark Radcliffe was not represented at the meeting, his conveyance or transfer of documents and information to Relators cannot be said to have been covered by the attorney-client privilege or the work product doctrine. He obviously participated in the meeting voluntarily, and nothing he said or did during the meeting is protected. As a practical matter, Mark Radcliffe may have had a common interest with Relators in creating the factual basis for their allegations, but legally he did not. The common interest doctrine does not apply in absence of the attorney-client or work product privilege, and in any event Mark Radcliffe's interest which he might have shared with Relators expired prior to the meeting when the Supreme Court denied his Certiorari Petition. The result is not altered by the fact that

Relators' attorneys were present at the meeting. They were there representing Relators as they were planning the filing of the Complaint in this matter. They were not representing Mark Radcliffe. To the extent that they actually participated in the conveyance and transfer of documents and information from Mark Radcliffe to relators, they did not do so as Mark Radcliffe's attorneys. Of course, they might have had confidential communications with Relators without Mark Radcliffe being present. Those communications would be privileged. Having found that no privilege applies to Mark Radcliffe's conveyance or transfer of documents and information to Relators at the late 2010 meeting, the <u>Shelton</u> Standard is met.

It is therefore hereby **ORDERED** that Relators' Motion to Quash Subpoenas Seeking to Depose Their Counsel (Document No. 155.) is **DENIED**. Purdue may take the depositions of Relators' attorneys. Purdue should focus its questioning upon learning when and how Relators gained knowledge of the facts and circumstances underlying the allegations contained in Relators' Complaint. Purdue should be careful to limit its questioning respecting the late 2010 meeting to matters pertaining to Mark Radcliffe's and Relators' attorneys' conveyance and transfer of documents and information to Relators.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: October 2, 2014.

R. Clarke VanDervort
United States Magistrate Judge