IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| UNITED STATES )<br>    ex rel. Steven May and )<br>    Angela Radcliffe, *et al.*, )<br>         )<br>    **Plaintiff,** )<br>v. )<br>         )<br>**PURDUE PHARMA L.P.,** *et al.*, )<br>         )<br>    **Defendants.** ) | Civil Action No. 5:10-1423 |

**MEMORANDUM OPINION AND ORDER**

On September 18, 2014, Defendants [hereinafter "Purdue"] filed a Motion to Compel Certain Information and Documents from Relators. (Document No. 168.) . Plaintiff [hereinafter "Relators"] filed their Opposition to Purdue's Motion to Compel on September 29, 2014. (Document No. 178.) Purdue filed a Reply in Support of its Motion to Compel Certain Information and Documents from Relators on October 1, 2014. (Document No. 180.) Additionally, on September 26, 2014, Purdue filed a Motion to Compel Answers to Deposition Questions and to Expedite Consideration. (Document No. 177.) Relators have filed no response to this Motion. The District Court has scheduled a hearing respecting the application of the public disclosure bar to jurisdiction in this matter on Thursday, October 9, 2014, and Purdue contends that the documents and information which it seeks by its Motions to Compel are "critical" to that hearing. (Document No. 168, p. 2.)

By its Motion to Compel Certain Information and Documents from Relators (Document No. 168.), Purdue asks the Court to require Relators to overrule Relators objections to responding to Interrogatories 2, 3, and 4 of Purdue's First Set of Interrogatories based upon privilege. By Interrogatories 2, 3 and 4, Purdue asked Relators to identify and give details respecting (1) every

communication Relators had with Mark Radcliffe, (2) every communication between Relator Steven May and Relator Angela Radcliffe and (3) every communication Relators had with their attorneys Mark Hurt and/or Paul Roop prior to December 30, 2010, concerning Relators' allegations against Purdue, Mark Radcliffe's allegations against Purdue in <u>United States ex rel. Mark Radcliffe v. Purdue Pharma, L.P. et al.</u>, Civil Action No. 1:05-cv-00089, in the United States District Court for the Western District of Virginia, Purdue's marketing of OxyContin, the relative potency of oxycodone and morphine, the relative cost of oxycodone and morphine, and /or any actual or potential claims against Purdue. In responding to Interrogatory No. 2, Relators objected claiming that the requested information was "protected by the attorney-client privilege, joint-prosecution privilege, common interest rule, or marital privilege." Relators nevertheless then stated that "Relator Angela Radcliffe had many conversations with Mark Radcliffe both prior to and after his filing of his federal action against Purdue in which they discussed Purdue's wrongdoing that was ultimately set forth in Mark Radcliffe's complaint in that action." Relators cite Angela Radcliffe's Declaration (Document No. 31 - 2.) for details of some of the conversations. Relators state that "[i]n Spring 2010, Mark Radcliffe reconnected with Steve May and told Steve about his lawsuit against Purdue . . ."[1] Relators further stated that "[s]ubsequest to those conversations, and later in 2010, a meeting was held among Mark Hurt, Paul Roop, Mark Radcliffe, Steven May and Angela Radcliffe at the law offices of Mark Hurt. The subject-matter of the conversation was this prospective action as well as related potential claims that Mark Radcliffe had vis-a vis Purdue. The details of the discussion are protected from disclosure by the attorney-client, attorney-work product, and common interest

---

[1] Relator Steven May's Declaration is at Document No. 31 - 3. Mr. May states therein at Paragraph 4, "I did not learn that the 2:1 claims were false until after I left Purdue's employee on January 1, 2005, from my investigations and my conversations with Mark and Angela Radcliffe."

2

privileges. The parties agreed to cooperate and share information on their claims, which included Mark Radcliffe allowing relators' counsel to use all of the original source documents and nonpublic information from the action that Mark Radcliffe had brought, and to keep that information confidential from third-parties." In response to Interrogatories 3 and 4, Relators objected to responding on grounds that the requested information was "protected by attorney-client privilege, common legal interest doctrine, and joint-prosecution privilege" and referred to their response to Interrogatory No. 2. Purdue contends that Relators have refused to disclose communications, information and documents germane to the public disclosure issue "concealing the details concerning the putative channeling of that information behind sweeping, generic assertions of privilege." (Document No. 168, p. 3.) Purdue claims that (1) Relators' assertions of privilege are conclusory and therefore insufficient; (2) Relators' communications with each other and Mark Radcliffe without counsel present are not privileged as Relators claim; and (3) "[b]y selectively disclosing and putting at issue the communications through which the Relators learned of the fraud alleged in the Amended Complaint, Relators have waived any applicable privileges or protection regarding those communications." (Id., pp. 3 - 4.) More specifically, Purdue contends that Relators' claims of privilege respecting their communications with Mark Radcliffe is "too generic to be sustained." (Id., p. 5.) Purdue asserts that the attorney-client and work product privileges do not apply to those communications and therefore the common interest doctrine cannot be said to apply. (Id., pp. 6 - 7.) Further, Purdue asserts, the marital privilege does not apply to any conversations between Mark and Angela Radcliffe if they occurred in the presence of Steven May or other third parties. (Id., pp. 7 - 8.) Purdue claims that even if a privilege applies respecting Relators communications with Mark Radcliffe, Relators waived it by relying upon those communications in

explaining how they obtained knowledge of the fraud which they allege in their pleadings. (Id., pp. 9 - 10.) Next, Purdue contends that Relators cannot claim privilege respecting communications with each other because they have placed those communications in issue as Steven May has indicated that he learned of the fraud alleged in the pleading to some extent from Angela Radcliffe. (Id., 11.) Purdue then contends that Relators cannot claim privilege respecting communications with counsel when Mark Radcliffe, a "non-party", was present. (Id., pp. 11 - 12.) If a privilege existed respecting those communication, Purdue asserts, Relators waived it by disclosing the communications to Mark Radcliffe and placing them in issue in litigating the public disclosure issue. (Id., p. 12.) Purdue then asserts that Relators cannot claim privilege respecting any contractual agreements between them and Mark Radcliffe (Id., p. 13.) and have not provided a privilege log describing documents which they have withheld as privileged. (Id., p. 14.) Purdue therefore requests that the Court order Relators to disclose information respecting communications between them and Mark Radcliffe, each other and with their attorneys without and with Mark Radcliffe present about the allegations of fraud contained in their pleadings and information about contracts or agreements between them or with Mark Radcliffe about litigation against Purdue. (Id., pp. 14 - 15.)

Opposing the Motion (Document No. 178.), Relators state that they entered into an oral information sharing agreement with Mark Radcliffe and all communications, documents and information conveyed and transferred between them is therefore protected from disclosure under the common interest doctrine. Relators state that though Mark Radcliffe's suit against Purdue was dismissed, Relators' attorneys "continued to represent him with respect to his other claims against Purdue arising out of the sale of OxyContin." (Id., p. 2.) Relators state that "[s]ubsequent to the onset of that agreement, confidential information from Mark Radcliffe's case has been shared with

4

relators via their shared counsel, and vice versa." (Id., pp. 2 - 3.) Relators urge that the common interest doctrine applies even though Mark Radcliffe has no further litigation pending against Purdue. (Id., p. 3 at fn. 1) Next, Relators dispute Purdue's claim that they have waived privileges against disclosure of their communications with Mark Radcliffe by their conduct. They refer to arguments which they raised in their Motion to Quash Subpoenas Seeking to Depose Their Counsel (Document No. 155.). (Id., p. 4.) Relators then dispute Purdue's claim that by not claiming privilege with respect to communications between them and Mark Radcliffe before they entered the oral information sharing agreement, they have waived any applicable privilege against disclosure of all communications between them and with Mark Radcliffe and their attorneys. (Id.) Relators then assert that by operation of the attorney-client privilege, Purdue is not entitled to disclosure of their communications with their attorneys and by operation of the common interest privilege, Purdue is not entitled to disclosure of their communications with their attorneys and Mark Radcliffe after the common interest agreement was made. (Id., p. 5.) Relators then state that through their testimony they have given Purdue all of the details respecting their agreements with Mark Radcliffe. (Id., p. 6.) Relators then assert that Purdue itself has made general objections on grounds of privilege and has failed to provide a privilege log and should not be heard to complain about Relators in these regards. (Id., pp. 6 - 7.) Finally, Relators request that the Court delay in enforcing any ruling requiring disclosure of communications, information and documents which they claim to be privileged so that they can have time to seek the District Court's review. (Id., p. 7.)

In reply (Document No. 180.), Purdue states that Relators have not met their burden of proving any privilege covering the information, documents and communications which Purdue is requesting to be disclosed or refuted Purdue's claim that they waived any privilege which applies

by relying affirmatively upon the information, documents and communications in defending against Purdue's claim that the public disclosure bar applies. (Id., p. 1 - 2.) Purdue contends that Relators cannot rely upon the common interest doctrine and must be required to disclose their communications with Mark Radcliffe because Mark Radcliffe, having released all claims against Purdue as the Fourth Circuit found, cannot be said to have any interest in litigation against Purdue. (Id., pp. 3 - 5.) Purdue further asserts that Relators' contention that they and Mark Radcliffe entered an agreement to share information is a "conclusory assertion" and Relators actually had no information to share with Mark Radcliffe. (Id., p. 5.) Purdue contends further that if any privilege applies to Relators' communications with Mark Radcliffe, Relators have waived or abandoned it by putting those communications in issue. (Id., pp. 6 - 7.) Next, Purdue contends that Relators must be compelled to disclose communications between them because they have mentioned their communications in giving their depositions and have placed their communications in issue. (Id., pp. 7 - 8.) Next, Purdue argues that Relators must be compelled to disclose some of their communications with their attorneys because they have put them at issue. (Id., pp. 9 - 12.) Purdue states that "Relators have made an affirmative decision to base their public disclosure bar arguments on their counsel's work product and their communications with their counsel. Because of that affirmative choice, Relators have put their attorney's advice and work product in issue." (Id., p. 12.) Purdue then disputes Relators' claim that details respecting how their attorneys prepared their Complaint are irrelevant. Purdue asserts that "if Relators derived their knowledge of their allegations from . . . reviewing public disclosures from the prior Mark Radcliffe case or having them described by counsel, their knowledge of allegations would have been derived from a public disclosure, regardless of the source from which counsel derived counsel's knowledge prior to filing that

disclosure." (Id., p. 13.) Next, Purdue contends that Relators have not met their burden of showing why any agreement between them is privileged. (Id., p. 14.) Finally, Purdue addresses Relators' points respecting the production of privilege logs. (Id., p. 15 - 16.)

By its Motion to Compel Answers to Deposition Questions and to Expedite Consideration (Document No. 177.), Purdue asks the Court to find that certain information requested by Purdue at the depositions of the Relators and Mark Radcliffe is not protected from disclosure on grounds of privilege and to order Relators and Mark Radcliffe to answer Purdue's questions on the topics covered by those questions. Purdue asserts that the information sought at the depositions and Relators' privilege assertions overlap substantially with the written discovery requests and objections set forth in Purdue's previously filed Motion to Compel (Document No. 168.), Relators' Response (Document No. 178.), and Purdue's Reply. (Document No. 180.) Citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982), Purdue asserts that Relators have failed to establish the applicability of the attorney-client privilege and that the privilege was not waived respecting the deposition testimony of Relators and Mark Radcliffe. (Document No. 177, pp. 4 - 10.) Purdue addresses Relators' claims of privilege in the context of three relationships: communications between Relators and Mark Radcliffe, communications between Relators, and communications between Relators and their counsel. First, regarding communications between Relators and Mark Radcliffe, Relators broadly asserted at their depositions "privilege over the very communications over which Relators claim to have learned of the allegations underpinning their lawsuit." (Id., p. 5.) Despite having "agreed to cooperate and share information" in a meeting in late 2010, counsel instructed Relators and Mark Radcliffe not to divulge the substance of any communications from that meeting. (Id., p. 4 - 5.) Relator Angela Radcliffe acknowledged in her deposition that the

7

meeting included a discussion of the claims that she would be bringing. (Id., p. 6.) Purdue therefore contends that they are entitled to discover those communications wherein Relators "putatively acquired their knowledge of fraud they have alleged, and to test Relators' claim that *none* of that knowledge was derived from public disclosure." (Id., p. 6 - 7.) Counsel also instructed Relator Steven May not to answer questions about communications that occurred in the presence of counsel, whether he attempted to learn about the lawsuit Mark Radcliffe had brought, and his knowledge that Dr. Jarvis was induced to prescribe OxyContin based on the challenged marketing representations. (Id., p. 5.) Counsel further instructed Mark Radcliffe not to disclose the content of his conversations with the Relators regarding his prior lawsuit and whether those conversations occurred in the presence of counsel. (Id., pp. 5 - 6.) Finally, counsel instructed Relators not to answer questions regarding the substance of their meeting with their attorneys and the Government in February, 2011. (Id., p. 6.) Purdue asserts that Mark Radcliffe neither is a party to the present litigation nor has a common legal interest with Relators. (Id.) Citing Lending Tree, LLC v. Zillow, Inc., No. 10-439, 2013 WL 6385297 (W.D. N.C. Dec. 6, 2013) and Small v. Hunt, 152 F.R.D. 509 (E.D. N.C. 1994), Purdue asserts to the extent that such communications were privileged, any privilege has been waived due to Relators' repeated assertions that they learned of the alleged fraud from their conversations with Mark Radcliffe rather than from any public disclosures. (Id.) Second, regarding communications between Relators in the presence of Mark Radcliffe, Purdue contends foremost that the communications are not privileged, but also that the privilege was waived when Relators placed their conversations at issue. (Id., p. 7.) Steven May specifically stated that he learned that the 2:1 claims were false from conversations with Mark and Angela Radcliffe (Document No. 168, p. 11.), and consequently waived the right to assert privilege. (Document No. 177, p. 7.) Finally, regarding

communications with counsel, it is clear that counsel repeatedly instructed Relators and Mark Radcliffe not to answer questions respecting communications through which Relators learned of facts underlying Relators' allegations as to whether counsel was present during those conversations. (Id., pp. 7-10.) It is Purdue's position that Mark Radcliffe's presence during Relators' conversations with counsel destroys any privilege over those communications. (Id., p. 8.) Similarly, citing In re Grand Jury Subpoena, 341 F.3d 331, 336 (4th Cir. 2003), Purdue asserts that to the extent that Relators disclosed to Mark Radcliffe their communications with counsel, any privilege in those communications also is waived. (Id.) As noted in Purdue's Motion to Compel Information and Documents (Document No. 168, p. 13, fn. 4.), "although the blanket privilege assertions and refusal to answer questions during the depositions of Mr. May and the Radcliffes were not new, they directly contradict Relators' own prior suggestion that Purdue *could* obtain the necessary information from Relators (as opposed to having to question Relators' counsel). . . . Relators cannot both invoke their depositions as an available source of information to shield their lawyers from testifying and then refuse to answer the very questions at issue." (Document No. 177, pp. 9 - 10.)

By Memorandum Opinion and Order filed on October 2, 2014, denying Relators' Motion to Quash subpoenas of the depositions of their attorneys (Document No. 181.), the undersigned determined that certain information and communications between Relators and Mark Radcliffe and their attorneys pertaining to how and when Relators gained knowledge of the circumstances underlying their allegations of fraud were relevant and not privileged against disclosure. The undersigned notes that Relators' attorneys' depositions were noticed for October 7, 2014. (Document Nos. 185 - 186.) Presumably, those depositions went forward then rendering the Court's consideration of Purdue's Motions to Compel herein moot to some extent. To the extent that issues

9

presented by the above referenced Motions to Compel remain viable, having thoroughly examined Purdue's Motions, Relators' Response, Purdue's Reply, and authority cited therein, the undersigned finds no reason to deviate from the course taken in ruling upon Relators' Motion to Quash. The undersigned finds that Relators have not met their burden of proving that any privilege applies to the information requested in Interrogatory Nos. 2, 3 and 4 of Purdue's First Set of Interrogatories or communications between Relators and Mark Radcliffe and Relators and their attorneys with Mark Radcliffe present. It is therefore hereby **ORDERED** that Relators' objections to Interrogatory Nos. 2, 3 and 4 of Purdue's First Set of Interrogatories and deposition questions during the depositions of Mark and Angela Radcliffe and Steven May respecting communications between Relators and Mark Radcliffe and Relators and their attorneys with Mark Radcliffe present respecting how and when Relators gained knowledge of the circumstances underlying their claims of fraud are **OVERRULED** and Purdue's Motions to Compel (Document Nos. 168 and 177.) are **GRANTED**.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: October 8, 2014.

R. Clarke VanDervort
United States Magistrate Judge